May it please the Court, the sole question on appeal is whether the forwarding card disclosed in the Bell reference satisfies the processing engine limitation of the challenge claims and whether it is capable of performing the multi-protocol limitation in those claims as well. The Board construed what it characterized as a multi-protocol limitation as two or more of Ethernet, ATM, frame relay that constitute a first and second protocol within a layer. The Board went on to... I think Bell discloses different protocols and the question is does it suggest putting chips to address those protocols on a single call, right? That's right, Your Honor, and we can best, I think, get the framework for this discussion by looking at the figure on page 13 of the red brief. You may be right that the figure and the specification don't clearly state that that should be done, but there's expert testimony that someone reading Bell would understand that, right? That's true, but Bell contravenes that testimony and we think it's pretty clear. But even if it's true that you posit a reasonable alternative interpretation of Bell, isn't our question here whether or not there is substantial evidence from which the Board could reach a contrary factual conclusion? Yes, that's the standard, Your Honor, but if an expert says that the sky is green when there's obvious empirical data that that is not true, then there is no substantial evidence supporting the opinions. And here, if Bell clearly says that you cannot simply add chips for the purpose of processing different kinds of protocol data, despite what Dr. Lavian may have opined, it's clear that that just isn't Bell's teachings. Well, I don't see where Bell says that you can't do that. Well, there's a question of whether it says you should do that. Your Honor, first of all, if we go to page A4562 and look at column 50 of Bell, beginning at line 36. There, that's the passage that Dr. Lavian and Juniper rely upon for Dr. Lavian's amended What column and line numbers are we looking at? Column 50, line 36, Your Honor. Thank you. And that's the passage ending with the other protocols can also be implemented sentence that Dr. Lavian relied upon in modifying figure 36B from Bell. The very first sentence in that passage reads, the ingress interface chip will be specific to the protocol of the data within the path. So if we start adding chips to position 584B, the way that Dr. Lavian has proposed, then the ingress interface chip won't be specific to the protocol of the data within the path anymore. Well, that may be true, but you could have multiple chips on the same card to process different protocols. First of all, there's no evidence as to why one of ordinary skill in the art would do that. Secondly, this is what 36B is modified by Dr. Lavian is what Dr. Lavian says one would have done. But that's not consistent with Bell's teachings. You would have to go completely outside of Bell to come up with this configuration. If we go to that same column, beginning at line 50, Bell's specification there teaches that the ATM IP chip passes cells to an ingress bridge chip, e.g. BG586A through 586B, which serves as an interface to an ingress traffic management chip or chip set, e.g. TM588A to 588N. So if 584B, as Dr. Lavian has opined, could be an ingress frame relay, then it couldn't pass ATM data to the subsequent chips in this path. The only way that works is if all of these elements, 584A through 584N, are ingress ATM interface chips. If they're not, then it can't do this teaching that Bell says is what's supposed to be done in his system. We also have column 48, lines 41 to 42. Bell teaches that a forwarding card in a network device is similar to a line card of a computer system. Did you put on any expert testimony articulating the arguments that you're making now? We did. It was rejected by the board, Your Honor. Why was it rejected? The board said it was conclusory. And the board also found that you waived at least one aspect of this argument. We waived whether the chips in Bell can correspond to the processing engine. But really, that argument is unnecessary to what we're actually saying. It doesn't really matter what is identified as the processing engine in Bell. It has to be capable of satisfying the multiprotocol limitation. And all of the descriptors of these ingress interface chips in Bell suggest that they have to be one and only one protocol, that you can't mix and match the way Dr. Lavian has suggested. Again, going back to what Bell said about forwarding cards being similar to line cards in a computer system, he actually describes line cards as well. What he says, beginning at column 2, line 50, line cards 16A and 16B could be cards that implement asynchronous transfer mode protocol over synchronous optical network protocol, as indicated by a particular card type, e.g. 0xF002, and line card 16E could be a card that implements internet protocol IP over SONNET, as indicated by a different card type. Your problem I'm having is you're asking us to be fact finders here, and you're asking us to treat your argument as expert evidence that contradicts what the board said. That's not our job. That's the problem. We're not asking, Judge, we're not asking you to be a fact finder. We're asking you to review the findings by the board in light of the evidence that was before the board. We're not asking you to, for example, read into these teachings. We're saying take the teachings at face value. They're part of the record. Well, you're saying that the teachings are saying don't do what's in the patent, what's claimed, and that's, I see the points that you're making, and you're reading from the references, and I see the points you're making, but I don't see where they say they teach away from the combination. We're not saying... And that's also just one other point, which is just that I wanted to recommend that in the future, when you give us prior references in the appendix, I suggest that you include all the pages of the reference. In the appendix, you'll see that we just get maybe eight pages of the spell reference. Not every page of the reference has been included. I apologize, Your Honor. That certainly wasn't our intention. I apologize if that happened. Certainly, we will make sure that all references in their entirety are included next time. I mean, but didn't the board make specific findings that spell contained multiple references to flexibility and capability of handling various protocol data streams? I mean, why aren't those relevant to the ultimate? Why doesn't that constitute evidence upon which the board could rely in concluding that your opponent's expert's testimony was worthy of consideration? Because the flexibility evidence that the board cited to, in fact, again, says exactly the opposite of what Dr. Labian opined. If we look at column 53 of Bell, starting at line 9, this is the flexibility passage that, or part of the flexibility passage that Dr. Labian relied upon. And it reads, as previously mentioned, each primary forwarding card may support a different protocol, e.g. ATM, MPLS, IP, and frame relay. So stopping there, the forwarding card is the entirety of figure 36B that Dr. Labian amended. So if a forwarding card supports a protocol, then you can't mix and match ingress frame relay and ingress ATM chips. It doesn't say that it can't support multiple protocols, right? Judge, I understand that. It says do it this way, which I agree is not the same thing. No, it doesn't say do it that way. It says each primary card may support a different protocol, which is one possibility. Then let's read on, Your Honor. Similarly, each universal port card may support a different protocol, e.g. SONNET, Ethernet. A backup or spare forwarding card or universal port card must support the same protocol as the primary card or cards. Again, this is mandatory. This is no longer may. So again, you can't mix and match in a forwarding card. It has a backup card. Let's talk about a backup or spare forwarding card. That's right, Your Honor. But they would have the same configuration as 36B. There isn't a special category of primary and backup forwarding cards in Bell. The whole point of the flexibility is you have a multiplicity of these forwarding cards that you can switch traffic to as needed. So you're not going to have a primary forwarding card that has a multiplicity of protocols processed by it and then have a backup forwarding card that's only capable of a single protocol. Certainly one configuration, right? But it doesn't foreclose other configurations in which you have chips on a single card that can process different protocols. But Your Honor, that wasn't Dr. Lavian's opinion. Dr. Lavian didn't say, ignore what Bell says about this. Here is what someone would have done beyond that. What he said was, this is what Bell teaches. That 36B is merely an iteration of Bell's expressed teachings. I don't think he relied on this language for that. No, he didn't, Your Honor. But that's the point. He lifted a single passage talking about the ability to support multiple protocols and concluded that within the context of Bell, that meant inserting another card additional to whatever is there as opposed to swapping one out for the other. And it's true. Bell does say that the ingress chip could support multiple protocols. But what you do in that circumstance is you convert it from something that processes ATM to something that processes, for example, Ethernet. You wouldn't convert it to something that has a multiplicity of chips, each specific to a protocol. Bell doesn't teach that. And again, if we're looking at what Dr. Lavian actually said, the evidence that the board relied upon, he didn't say someone reading Bell would have extrapolated Bell to do it this way. He said, this is what Bell teaches. And the only way it teaches that is if you take a relatively ambiguous single sentence out of Bell and ignore everything else that Bell teaches, including the passage I've just referred the panel to. If you read that one thing that Dr. Lavian relies upon in the context of the entire reference, which this court has said is the way you read references, then in the context of the entirety of that reference, what Bell is saying is you can have these ingress interface cards and you can have a multiplicity of chips in there. But they all handle the same protocol. Nothing in Bell suggests making these chips capable of handling a multiplicity of protocols at the same time. So if we continue from this passage in Bell, at column 53, it says, if forwarding or universal port cards in one quadrant support multiple protocols and the cross-connection cards are interconnected, each quadrant may need multiple backup forwarding and universal port cards, i.e., one for each protocol supported. So again, what Bell is saying is if you're going to have a multiplicity of these protocols being handled, you have to have a multiplicity of forwarding cards, meaning a forwarding card is not going to be capable of processing a multiplicity of protocols. That's what Bell teaches in its entirety. And that's the thing Dr. Lavian ignored when he said, looking at this single sentence in isolation, I think this is what Bell teaches as I've depicted in figure 36B. Thank you. Okay. We'll save the rest of your time. Ms. Carson? May it please the Court. The Board's factual determination that Bell meets the multiprotocol limitation is supported by substantial evidence and should not be disturbed. When looking at the record as a whole, it's clear that the Board's finding that Bell's forwarding cards are capable of receiving and processing multiple protocols of data is supported by detailed evidence and multiple different passages from Bell. I think in order to put this in context, some of the additional statements from Bell are important. So if you look at the network switches as a whole in Bell, it receives data through what are called universal port cards. And the reference indicates that each external network connection may provide multiple streams or paths, and each stream or path may include data being transmitted according to a different protocol. It uses the examples ATM, MPLS, IP, and frame relay, and that's at A4564, column 53, lines 50 through 64. So multiple different protocols come in through the universal port cards on different paths. Then the next step is that those paths of data are transferred to the forwarding cards. And what Bell says about that is that any port on any universal port card can be transported to any port on any forwarding card. So the logical inference from that is that if multiple paths of data are coming in and there are multiple protocols, and any one of those paths can be transferred to a forwarding card, the logical inference and the inference that the Board drew from that was that the forwarding cards process multiple protocols of data. Now figure 36B provides an example of how that's implemented, and that is where there are multiple interface chips on a single forwarding card. And the passage that describes that forwarding card, as Appellant referred to, is in column 50, lines 36 through 50. It's also important to put into context that particular passage as describing a single forwarding card. So Appellant has urged the Board, and has now urged the Court, to interpret that as saying that other protocols can be implemented on other forwarding cards. But that's not what the passage says. The passage is talking about a single forwarding card, and it says as one example, an interface chip on that card could be ATM, but other protocols can also be implemented. And that language can also be implemented is important, because in talking about this specific forwarding card, Bell is saying that other protocols can also be implemented. If it was intending to disclose that different forwarding cards could have different protocols, the language chosen would have been other protocols can be implemented, not can also be implemented on that particular forwarding card. Well, that's reading an awful lot into the way that's phrased. He does cite a number of portions in the written description that do discuss swapping out one card for another, doesn't he? So there certainly are other embodiments described by Bell that talk about having a forwarding card that is specific to a particular protocol. The whole point of Bell is that it provides a modular system where it can be implemented in a way that is advantageous to the network administrator, and you can swap out components. And that's the whole purpose. Of course, some of those embodiments are directed towards situations where you might want to have a protocol-specific forwarding card. But other implementations, including the implementations where Bell talks about sending any path to any forwarding card, and indeed the implementation that's discussed in column 50, lines 36 through 50, talk about a situation where the forwarding card could process multiple protocols. So is that the only place that you rely upon to say that one card can process multiple protocols? So no. So column 50 is one example of that disclosure. The other disclosures that talk about the flexibility and the transmission of any path on any port to any forwarding card, that's discussed in column 52, lines 10 through 14. In addition, there's some language that the forwarding cards are similar to line cards. This is at column 48, lines 40 through 44, where it says that the forwarding cards are similar to line cards 16A to 16N. And if you look earlier in the reference, at column 17, lines 56 to 62, that's at 45, 46, Bell states that the ports of the line cards can be enabled to receive and process a single port protocol, or alternatively, each port can be enabled to run a different protocol. So that's another disclosure where the forwarding cards are being compared to the line cards that are disclosed earlier in the reference, and the line cards process multiple protocols. I think also the important thing here is how these passages, and Bell as a whole, would be read by one of skill in the art. And the only evidence of that in the record is the Declaration of Taulabian. And he agrees that these passages, and Bell as a whole, would be read to enable and disclose forwarding cards that process multiple protocols. And that evidence was unrebutted. Appellant mentioned that they had submitted expert testimony in that case, and it was actually not accurate. That was in the prior case with the 652 patent. In this particular case, they never submitted a declaration, and they never submitted any evidence from an expert, or one of skill in the art, as to how these disclosures would be read. And so all of the argument is just attorney argument. And what's important in this case is not what I think it says, or what he thinks it says. It matters what one of skill in the art thinks it says. Another aspect that Appellant ignores in terms of the context of this particular passage in column 50 is that when describing the interface chip as one example of an ATM interface chip, Bell refers to 584A. It doesn't refer to 584A through N. So that is another aspect that's in support of the way that Dr. Labian testified one of skill would read this passage. If Bell intended to disclose that all of the chips had to be the same protocol, it would say that the forwarding chip, or 584A through N was an ATM chip. Anything further? No, Your Honor. Unless the panel has any further questions, I have nothing to add. OK. Thank you, Ms. Carson. What is your response to Ms. Carson's reference to the disclosure that the forwarding cards are like the line cards, which are earlier disclosed as supporting multiple protocols? The specific reference that I read earlier about the description of line cards 16A and 16B said that each line card supports a different protocol. The multiport reference that Ms. Carson referred to is that there could be a series of ports connected to individual line cards, each supporting a different protocol. If a line card is analogous to a forwarding card, then that means that each forwarding card supports a different protocol. In order for a forwarding card to be a processing engine, as claimed in the patent in question, each forwarding card would have to itself process a multiplicity of protocols. The very passage that Ms. Carson is citing, what it basically says is you can have one forwarding card for one protocol, another forwarding card for another protocol, and a third forwarding card for a third protocol. What it doesn't say is that you can have one forwarding card for a bunch of protocols. Why would it mean that on the chip, each forwarding card would have a different protocol? The forwarding card contains the chips, Your Honor. What I mean is each chip on the forwarding card. Because that's what that teaching says. It says that each forwarding card, which has a multiplicity of chips in it, 584A through N, can process a single protocol. If you want a second protocol processed in a quadrant through this multiplicity of, in to add another port and another forwarding card, or another line card in this case, that itself is able to process a different protocol. But that's not what the claimed invention is all about. It says a single processing engine, i.e. one line card or one forwarding card, is capable on its own of processing a multiplicity of protocols. So the very passage she referred the court to, in fact, says precisely what we say Bell is teaching, which is if you want multiple protocols processed, you have to have a multiplicity of line cards or forwarding cards, by analogy. And Bell teaches nowhere having a single line card or forwarding card that's capable of processing multiple protocols. In other words, the multi-protocol limitation as defined by the board, capable of processing multiple protocols in the same layer, isn't satisfied, isn't taught anywhere by Bell. Okay. Thank you. Thank you. We're out of time. Thank both counsel. The case is submitted.